UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LONG ISLAND PRECAST, INC.,

                    Petitioner,

                                            MEMORANDUM & ORDER
   -against-                          14-MC-0772(JS)

UNITED STATES DEPARTMENT OF LABOR,
OCCUPATIONAL SAFETY AND HEALTH
ADMINISTRATION,

                    Respondent.[1]
----------------------------------X
APPEARANCES
For Petitioner:     Saul D. Zabell, Esq.
                      Zabell & Associates, P.C.
                      1 Corporate Drive, Suite 103
                      Bohemia, NY 11716

For Respondent:     Susan Beth Jacobs, Esq.
                      United States Department of Labor
                      Office of the Solicitor
                      201 Varick Street, Room 983
                      New York, NY 10014

                      Thomas A. McFarland, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, NY 11722

SEYBERT, District Judge:

        Presently before the Court is petitioner Long Island Precast, Inc.'s ("Petitioner" or "Long Island Precast") motion to quash administrative subpoenas issued by respondent the

---

[1] Long Island Precast's submissions initiating this action incorrectly named itself as defendant and OSHA as plaintiff. The Clerk of the Court is directed to amend the caption to name Long Island Precast as the petitioner and OSHA as the respondent.

United States Department of Labor, Occupational Safety and Health Administration ("OSHA" or "Respondent"). OSHA issued the administrative subpoenas during an investigation it undertook in response to an accident report involving one of Long Island Precast's employees. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

Long Island Precast is a manufacturer of precast concrete products. It owns and operates a fourteen-acre facility in Brookhaven, New York. (Calliari Decl., Docket Entry 8, ¶¶ 2, 4.) On June 5, 2014, the Long Island OSHA Area Office received a report that one of Long Island Precast's employees had fallen off a piece of machinery from a height of more than nine feet. (Calliari Decl. ¶ 3.) As a result of the accident report, the Long Island OSHA Area Office initiated an on-site inspection of Long Island Precast's Brookhaven facility. Brian Calliari, an OSHA Compliance Safety and Health Officer, (the "CSHO") conducted on-site inspections on June 5 and 6, 2014. (Calliari Decl. ¶¶ 4, 10-15.)

During the first on-site inspection, the CSHO learned that the injured employee, Carlos Mendoza ("Mendoza"), had fallen approximately nine feet, three inches while he was climbing the vertical face of three concrete catch basins. (Calliari Decl. ¶ 11.) Mendoza worked as a "hookerman" on the

day of the accident, loading and rigging concrete catch basins onto a forklift truck. He apparently fell while attempting to retrieve and rig the basin at the top of the stack he was climbing. (Calliari Decl. ¶¶ 11-13.) The CSHO learned of several purported hazards related to Mendoza's accident, including that (1) Mendoza and other employees routinely accessed elevated product stacks by climbing the face of the product rather than using a ladder, (2) there was no fall protection in place at the time of Mendoza's accident, and (3) there were several deficiencies in the forklift used during Mendoza's accident. (Calliari Decl. ¶¶ 12-14.) With respect to the forklift, the CSHO has submitted a declaration attesting to the following deficiencies:

> (1) the data plate on the HysterLift powered industrial truck indicated that it was equipped with 72" forks, not a fixed boom attachment; (2) the fixed boom attachment was not equipped with a data plate indicating the rated capacity; (3) the Gunnebo Eye Type Sling Hook had excessive wear damage in the throat area of the hook; (4) the four Clevis sling hooks on the four-way chain sling were damaged in that they were missing the originally equipped safety latches; and (6) the four-way chain sling was not affixed with a tag indicating the rated capacity.

(Calliari Decl. ¶ 14.) During the second on-site inspection, the CSHO observed an employee riding on the side of a second forklift while it was in motion. (Calliari Decl. ¶ 15.) The

3

CSHO also observed deficiencies in this second forklift that were similar to the ones observed in the first forklift. (Calliari Decl. ¶ 15.)

Based on his observations of these workplace hazards, the CSHO determined that it was necessary to obtain more information through administrative subpoenas pursuant to Section 8(b) of the Occupational Safety and Health Act of 1970 (the "OSH Act"), 29 U.S.C. § 657(b). On June 13, 2014, OSHA served Long Island Precast with a Subpoena Duces Tecum and three Subpoenas Ad Testificandum. (See Calliari Decl. Exs. 2 & 3.) The Subpoena Duces Tecum generally seeks documents and information related to Long Island Precast's employees and forklifts. The Subpoenas Ad Testificandum demand the appearances of Long Island Precast's president, manager, and sales manager to testify regarding the working conditions maintained by Long Island Precast.

On June 18, 2014, Long Island Precast initiated this proceeding, moving to quash the administrative subpoenas. (Docket Entry 1.) OSHA opposes the motion and requests that the Court enforce the administrative subpoenas. (Docket Entry 7.)

## DISCUSSION

The Court will first address Long Island Precast's motion insofar as it seeks to quash the Subpoena Duces Tecum

before turning that portion of the motion directed to the Subpoenas Ad Testificandum.

I.  Subpoena Duces Tecum

Long Island Precast argues that the Court should quash the Subpoena Duces Tecum because, according to Long Island Precast, certain demands contained therein are beyond OSHA's authority, are too indefinite, and seek irrelevant information. (See Zabell Affirm., Docket Entry 2, ¶¶ 7-13; Pet'r's Reply Br., Docket Entry 9, at 3-6.) As discussed below, the Court disagrees with Long Island Precast's characterization of OSHA's demands, with the sole exception of one of the document demands.

A.  Applicable Law

Congress enacted the OSH Act in 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Consistent with that purpose, Section 5(a) of the OSH Act mandates that:

> Each employer (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; (2) shall comply with occupational safety and health standards . . . and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

29 U.S.C. § 654(a). So that the Department of Labor may carry out the purposes of the OSH Act, Section 8(a) of the OSH Act authorizes the Secretary of Labor to inspect and investigate workplaces. 29 U.S.C. § 657(a). Section 8(b) authorizes the issuance of administrative subpoenas requiring "the attendance and testimony of witnesses and the production of evidence under oath." 29 U.S.C. § 657(b).

The standard for determining the validity of a federal agency's administrative subpoena is set forth in the Supreme Court's opinion in United States v. Morton Salt Co., 338 U.S. 632, 70 S. Ct. 357, 94 L. Ed. 401 (1950). Under the Morton Salt standard, an administrative subpoena is valid if "[1] the inquiry is within the authority of the agency, [2] the demand is not too indefinite and [3] the information sought is reasonably relevant." In re McVane, 44 F.3d 1127, 1135 (2d Cir. 1995) (emphasis in original) (quoting Morton Salt, 338 U.S. at 642); see also United States v. Amalgamated Life Ins. Co., 534 F. Supp. 676, 679 (S.D.N.Y. 1982). The standard is based on the concept that "[a]n administrative agency . . . 'has a power of inquisition' akin to that of a grand jury, which it may exercise 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" McVane, 44 F.3d at 1135 (quoting Morton Salt, 338 U.S. at 642-43).

The Second Circuit has cautioned that "[t]he courts' role in a proceeding to enforce an administrative subpoena is 'extremely limited.'" Id. (quoting NLRB v. C.C.C. Assoc., Inc., 306 F.2d 534, 538 (2d Cir. 1962)). "A subpoena that satisfies [the Morton Salt] criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable, or issued in bad faith or for other improper purposes, 'or that compliance would be 'unnecessarily burdensome.'" NLRB v. Am. Med. Response, Inc., 438 F.3d 188, 192 (2d Cir. 2006) (quoting RNR Enters., Inc. v. SEC, 122 F.3d 93, 96 (2d Cir. 1997)).

The Department of Labor undoubtedly has the authority to issue administrative subpoenas during the course of an investigation. Donovan v. Mehlenbacher, 652 F.2d 228, 230 (2d Cir. 1981) (citation omitted). Additionally, the court "defer[s] to the agency's appraisal of relevancy, which 'must be accepted so long as it is not obviously wrong.'" McVane, 44 F.3d at 1135 (quoting Resolution Trust Corp. v. Walde, 18 F.3d 943, 946-47 (D.C. Cir. 1994)). The relevance of the information sought is determined "against the general purposes of the agency's investigation, 'which necessarily presupposes an inquiry into the permissible range of investigation under the statute.'" Id. (quoting Linde Thomson Langworthy Kohn & Van

Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1516 (D.C. Cir. 1993).

An affidavit from a government official will suffice "to establish a prima facie showing that [the Morton Salt] requirements have been met." Id. at 136 (citing United States v. Stuart, 489 U.S. 353, 360, 109 S. Ct. 1183, 1188, 103 L. Ed. 2d 388 (1989); United States v. Comley, 890 F.2d 539, 541-42 (1st Cir. 1989)). Ultimately, the party to whom the administrative subpoena is directed has the burden of demonstrating that the subpoena is unreasonable. Id. at 135 (citing FTC v. Rockefeller, 591 F.2d 182, 190 (2d Cir. 1979)).

B. Application

Petitioner argues that the following demands contained in the Subpoena Duces Tecum are invalid because they fail to meet the Morton Salt standard:

> (1) Documents reflecting all individuals who have performed services of any kind for Long Island Precast, Inc. and/or all of its subsidiaries to include full name, address, phone number, employment dates, position, and rate of pay. (Note: This includes full-time, part-time, temporary, secretarial/support staff, and management personnel.);
>
> (2) Payroll records for all employees for that period showing hours worked and wages paid;
>
> (3) Cash disbursement records for all employees, including any employee paid partially or entirely off-the-books;

8

(4) With respect to anyone with a financial interest in or ownership of Long Island Precast, Inc., documents reflecting name, address, phone number, title, and length of time in business;

(5) Complete list of all powered industrial trucks (forklifts) owned and operated by Long Island Precast, Inc. . . .;

(6) Complete list of all powered industrial truck (forklift) attachments . . . .

(7) Copies of all written tests, evaluations, training records, and certification records for all of Long Island Precast, Inc.'s current employee(s) that have been trained and/or are qualified to certify powered industrial truck (forklift) operators;

(8) Copies of any and all written tests, evaluations, training records, and certification records for all of Long Island Precast, Inc.'s current powered industrial truck (forklift) operators;

(9) Copies of any and all records or documentation from any other powered industrial truck manufacturer(s) upon which any attachment is either temporarily or permanently affixed to a powered industrial truck, which are owned and operated by Long Island Precast, Inc.;

(10) List of all personnel that conduct "Hookerman" and/or rigging duties when powered industrial trucks (forklifts) are used for outbound and inbound shipment of materials and/or products;

(11) Copy of CAD (Computer Aided Drafting) or construction drawing(s), depicting the plan and elevation views, for the 4' leeching galley. (Note: If this

information is proprietary, mark documents accordingly.);

(12) Copy of any and all invoice(s), bill(s) of lading, or itemized list of the products that were being taken from the storage yard and loaded onto the outbound truck at the time of the accident.

(13) Copies of any and all invoice(s), bill of lading(s), or itemized list of products taken from the storage yard and loaded onto trucks for outbound shipment(s) on June 5, 2014 using the Hyster Forklift, Model # H360XL / Serial # D019D03130X, and Hyster Forklift, Model # H360HD / Serial # EOJ 9E01915A, with the fixed boom attachment(s) as depicted in Attachment 3.

(Zabell Affirm Ex. A.)

Long Island Precast first argues that OSHA does not have the authority to subpoena these documents because, according to Long Island Precast, Section 8(b) of the OSH Act limits OSHA's inquiry to evidence related solely to Mendoza's accident. (Pet'r's Reply Br. at 3.) In other words, Long Island Precast appears to argue that, because OSHA's investigation was prompted by Mendoza's workplace accident, any subsequent administrative subpoena is forever fixed to this initial inquiry. This argument is incorrect. <u>First</u>, it reflects a complete misunderstanding of OSHA's investigatory role. As the Supreme Court explained in <u>Morton Salt</u>, "[w]hen investigative and accusatory duties are delegated by statute to

10

an administrative body, it . . . may take steps to inform itself as to whether there is probable violation of the law." 338 U.S. at 643. The Supreme Court expounded on the investigatory role of federal agencies such as OSHA as follows:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence <u>but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not</u>. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, <u>may take steps to inform itself as to whether there is probable violation of the law</u>.

Morton Salt, 338 U.S. at 642-43 (emphasis added). Thus, under Morton Salt, OSHA does have the authority to issue administrative subpoenas seeking documents beyond the subject matter of the initial accident report so long as the information sought is relevant to any inquiry that the Department of Labor is authorized to undertake. See, e.g., Dole v. Trinity Indus., Inc., 904 F.2d 867, 874 (3d Cir. 1990) (ordering "full enforcement" of a subpoena duces tecum "issued [by OSHA] in

11

connection with a limited workplace inspection following an employee complaint" even though the information sought was not relevant to the employee complaint because "[i]t is enough that the information sought is relevant to any inquiry that the Secretary is authorized by law to undertake").

Second, Long Island Precast's argument disregards that the CSHO observed and learned of several other additional hazards that were separate and apart from Mendoza's accident, including an employee riding on the side of a forklift, that other employees routinely accessed elevated product stacks by climbing the face of the product rather than using a ladder, and that there were several deficiencies in two of Long Island Precast's forklifts. These are precisely the types of observations that would give rise to a "suspicion that the law is being violated" and permit OSHA to "take steps to inform itself as to whether there is probable violation of the law." Morton Salt, 338 U.S. at 643.

Thus, having determined that OSHA had the authority to issue the administrative subpoena here, the question is whether the demands are relevant, are not too indefinite, and are reasonable. See Donovan, 652 F.2d at 231. Here, the Court finds that each of OSHA's demands are relevant to its investigation of purported hazards the CSHO observed during his on-site inspections, with the exception of the first demand

12

listed above, which seeks documents "reflecting all individuals who have performed services of <u>any kind</u> for Long Island Precast, Inc." This request should be limited to information and documents related to Long Island Precast's employees.

Aside from that limitation, the Court finds that the requests are not too indefinite or unreasonably burdensome. Each request specifically identifies the information sought and many of the requests are limited to a specific period of time. <u>Cf.</u> <u>Herman v. Avondale Shipyard</u>, No. 98-CV-3267, 1999 WL 13937, at *3 (E.D. La. Jan. 13, 1999) (finding OSHA demand "too indefinite" because it specifically sought "'any other relevant information'" (quoting demand)). The Court also finds that Long Island Precast has not met its burden of demonstrating that any of the demands are unreasonably burdensome. Long Island Precast fails to provide any compelling evidence that OSHA's demands will seriously disrupt or hinder its business operations other than counsel's unsupported assertions in a reply brief that Long Island Precast is a "relatively small business" and that OSHA already has access to the information sought. This does not suffice. <u>See</u> <u>Am. Med.</u>, 438 F.3d at 193 n.4 (noting that "courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." (internal quotation marks and citation omitted)).

Accordingly, Long Island Precast's motion to quash the Subpoena Duces Tecum is DENIED except that the first document demand listed above shall be limited to information relating only to Long Island Precast employees.

II. Subpoenas Ad Testificandum

Long Island Precast also argues that the Subpoenas Ad Testificandum seeking testimony from Long Island Precast's president, manager, and sales manager are invalid, and therefore should be quashed, because OSHA did not tender witness fees and mileage simultaneously with service of the subpoenas. (See Zabell Affirm. ¶¶ 14-16; Pet'r's Reply Br. at 6-7.) The Court disagrees.

> Section 8(b) of the OSH Act states:
>
> In making his inspections and investigations under this chapter the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath. <u>Witnesses shall be paid the same fees and mileage that are paid witnesses in the courts of the United States.</u>

29 U.S.C. § 657(b). Here, there is no dispute that OSHA did not tender witness fees and mileage. The issue is whether OSHA's failure to tender witness fees and mileage <u>simultaneously with service</u> of the subpoenas renders them invalid.

Long Island Precast argues that fees and mileage must be tendered at the time of service. In support of this argument, Long Island Precast relies on Federal Rule of Civil

14

Procedure 45, which plainly requires simultaneous tendering of witness fees and mileage with a subpoena. FED. R. CIV. P. 45(b)(1); see also Song v. Dreamtouch, No. 01-CV-0386, 2001 WL 487413, at *7 (S.D.N.Y. May 8, 2001) ("Where no fee is tendered with the service of a subpoena requiring a witness' attendance, the service is invalid."). However, the Federal Rules of Civil Procedure only "govern the procedure in all civil actions and proceedings in the United States district courts . . . ," FED. R. CIV. P. 1, and Long Island Precast cites no authority suggesting that Rule 45's service requirements apply to administrative subpoenas issued by OSHA pursuant to the OSH Act. The Court declines to impose such requirements here. Accordingly, Long Island Precast's motion to quash the Subpoenas Ad Testificandum on the ground of improper service is DENIED. This is not to say, however, that OSHA is not required to pay witness fees and mileage for a subpoena requiring a witness' attendance because Section 8(b) of the OSH Act explicitly requires OSHA to pay such fees and mileage. See 29 U.S.C. § 657(b). Rather, the Court only finds that service of the service of the Subpoenas Ad Testificandum was not improper.

## CONCLUSION

For the foregoing reasons, Long Island Precast's motion to quash the administrative subpoenas is GRANTED IN PART and DENIED IN PART. The Court finds that the Subpoenas Ad

15

Testificandum and the Subpoena Duces Tecum are fully enforceable, except that the first document demand of Attachment #1 to the Subpoena Duces Tecum shall be limited to information relating only to employees of Long Island Precast. Long Island Precast is further ORDERED to comply with the Subpoenas Ad Testificandum and the Subpoena Duces Tecum no later than ten (10) days after the entry of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July  29 , 2014
       Central Islip, New York